UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY FORD HOSPITAL,

        Plaintiff,                               Case Number 21-12352

v.                                                   Honorable David M. Lawson

OAKLAND TRUCK AND EQUIPMENT SALES,
INC. d/b/a REEFER PETERBUILT EMPLOYEE
WELFARE PLAN, CLAIM CHOICE, LLC, and
MONICA CHANEY,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Henry Ford Hospital alleges in a complaint that it provided medical services to defendant Monica Chaney on two occasions, once in 2017 and again in 2019, for which it has not been paid. Chaney was covered at the time by her employer's welfare benefit plan, which is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq*. The Hospital has brought this collection action against the Plan, its claims administrator, and the patient seeking payment for the medical services rendered. All of the defendants, who are represented by the same attorney, contest the Hospital's right to payment and have moved for summary judgment. It appears that the Hospital has disavowed any claim against the Plan and the administrator for the 2019 services and intends to proceed only against Chaney for that medical bill. The motion will be granted for that claim against those defendants only. However, fact questions preclude summary judgment in favor of the defendants on all other claims. Therefore, the motion for summary judgment will be granted in part and denied in part.

I.

Plaintiff Henry Ford Hospital is a non-profit hospital located in Detroit, Michigan. Defendant Oakland Truck and Equipment Sales, Inc. is the sponsor and administrator of an ERISA-governed self-funded healthcare benefits plan, namely the Reefer Peterbilt Employee Welfare Benefit Plan. Defendant ClaimChoice, LLC is the third-party administrator for the plan. Defendant Monica Chaney is the patient who allegedly received the hospital services for which compensation is sought in this case. The complaint alleges that the Hospital provided medical services to Chaney during two periods when she was covered under the benefit plan.

A. The 2017 Claim

Between September 19 and 22, 2017, the Hospital provided services to Monica Chaney for which a total of $122,281.07 was billed. Chaney experienced a steadily degrading spinal stenosis over several years, for which she saw Dr. Mokbel Chelid around June 2017. Monika Cheney dep., ECF No. 21-1, PageID.546. She described her condition then as being in "quite bad pain" that was present "all the time." *Id.* at PageID.547. Dr. Chelid ordered MRI scans and determined that the proper course of treatment was spinal fusion surgery, which was scheduled for September 19, 2017. On September 12, 2017, the Hospital faxed Chaney's medical records to the Plan's "clearinghouse," identified in the Hospital's account history as "Cofinity." Account Record, ECF No. 21-1, PageID.648. The Account Record indicates that on September 19, 2017, an authorization for the surgery was conveyed to the Hospital with authorization #20170912000357, accompanied by a note that the authorization was confirmed by "Case Manager Sarah." *Ibid.* On February 12, 2018, the Account Record shows that when the Hospital called AmeraPlan (defendant ClaimChoice, LLC's predecessor as claims administrator for the Plan), it was told that the claim was "approved" for payment of approximately $80,000, but that the "check has not been released yet." *Id.* at PageID.646. Over the following six months, more than a dozen similar inquiries were

- 2 -

met with the same response — the claim was "approved" but payment was "on hold" for various reasons, including because the employer had not released funds to the plan to pay the claim. *See* Account Record notes dated Mar. 14, 2018 — Aug. 20, 2018, PageID.642-645.

On August 31, 2018, the Hospital was told that the engagement of AmeraPlan as claims administrator had been terminated, and the Plan had retained ClaimChoice as the new administrator for the Plan. The Hospital again was told that the claim was approved, and that the administrator was merely waiting for the employer to release funds to pay the claim. On September 14, 2018, the Hospital was advised that records of the claim were "not on file" with AmeraPlan, and that the patient's medical records would need to be sent to the new claims administrator. It appears to be undisputed that AmeraPlan presently is defunct, and that the parties in this case were not able to obtain any records from its processing of the 2017 claim during discovery in this case. However, the plaintiff's records were sent to ClaimChoice by October 25, 2018, and the Hospital then was advised that "more time was needed for processing," and that the administrator still was waiting for funds to be released. *Id.* at PageID.641. The Hospital's record reflects numerous follow-up inquiries with both ClaimChoice and AmeraPlan over the ensuing months. However, on May 20, 2019, there is a note that a call to AmeraPlan went straight to a busy signal. The Hospital's representative then spoke with "Joann" at ClaimChoice on the same day, who could not answer why the claim had not been paid but said that it would be escalated to her supervisor. *Id.* at PageID.637. Subsequent notes from May 15, 2019 through the end of the account history in August 2020 indicate that the claim was referred to the Hospital's legal department for further action, after the Hospital was contacted by legal counsel for either the patient or the Plan. *Id.* at PageID.631-36. The record is not clear on which one retained the lawyer.

At no point in the account history is there any annotation that the 2017 claim was "denied" or that any notice of denial of the claim ever was issued by either AmeraPlan or ClaimChoice. The defendants have not identified any other information in the administrative record indicating that a notice of denial of the 2017 claim ever was sent to anyone. Instead, they now take the position that the claim was effectively "denied" after it was "ignored" by the claims administrators and no payment was forthcoming.

In cumulative supplemental briefing — which was submitted without leave of Court — the parties spar over the question whether "Cofinity," the Plan's supposed "clearinghouse" for inquiries as identified in the Hospital records, actually represented the Plan. The defendants insist that an entity known as "Inetico" was at the time the Plan's designee for processing precertification requests. The Hospital counters that Cofinity was a clearinghouse that was used for all of the Plan's claims and that it relayed those claims to Inetico, which is the entity that issued the authorization. The defendants do not point to any evidence suggesting that Cofinity was not, in fact, used by the Plan as a claims clearinghouse.

### B. 2019 Claim

Between March 6 and 11, 2019, the Hospital again provided services to Monica Chaney for which a total of $97,195.73 was billed. The Hospital received two authorizations for the billing. On March 11, 2019, an authorization was issued for a two-day inpatient stay ending March 7, 2019. On March 12, 2019, a second authorization was issued for an additional three days of inpatient stay, ending on March 10, 2019. On March 18, 2020, the Plan issued a partial payment of $5,706.40, which was accompanied by an annotation indicating that the patient was responsible for a remaining balance of $60,933.01, and the note: "Retro Authorizations Not Covered." The Plan now takes the position that although the two initial days of "observation" were covered, the ensuing surgery and recovery were not preauthorized and do not qualify for a preauthorization

exception as "emergency" services. However, in its response to the motion, the Hospital clarifies that it is not asserting any claim against the Plan for benefits covering the 2019 services. Instead, it contends that the only claim for payment of those billings is its plain breach of contract claim, which was pleaded against Chaney individually, and not against the Plan defendants. Apparently, Chaney never assigned her rights under the Plan to the Hospital for the 2019 admission.

C. Plan Terms

The Plan's Summary Description includes restrictions on payment of benefits for certain services performed without prior authorization. The Plan states:

> You and your covered dependents are required to obtain precertification for inpatient hospitalization (and certain other treatments) as shown in the Summary of Medical Benefits above. In some cases, the in-network provider may obtain the precertification for you; however, to ensure that you receive the maximum benefit, you should verify that the request was submitted to the Plan.

Plan Summary Description, ECF No. 19-1, PageID.371. The Plan further states that "[i]f precertification requirements are not met, any covered expenses incurred may not be covered. In addition, if it is determined subsequently that all or part of the hospital stay was not medically necessary, all or part of the hospital confinement expenses may be denied." *Ibid.* The Summary of Medical Benefits identifies both "Hospital Services — Inpatient" and "Surgery — Hospital Inpatient" as categories for which precertification is required. *Id.* at PageID.355, 357. The Plan defines "Hospital Services" to include "room and board," "services required for medical or surgical care," "services of nursing and other hospital staff providing care," "emergency room services," and "medically necessary services." *Id.* at PageID.360. The term "Surgery" is defined to "include[] surgeries performed in a doctor's office, outpatient facility or hospital." *Id.* at PageID.363.

The Plan states that "Emergency/Acute Care," including "Hospital ER Room [sic]" services are covered without precertification. Plan at PageID.355. The Plan sets forth a definition

of "emergency" within the description of coverage for "Emergency Room" services as including "fractures, lacerations, motor vehicle accidents, hemorrhage, shock, poisoning, or other conditions associated with deterioration of vital life functions." Plan at PageID.359.

The Plan provides for an administrative appeal procedure from claims that are denied. First, the Plan states that claims denials will be issued via a written notice that describes appeal rights. Plan at PageID.382. The Plan further provides that an appeal may be taken from a denial and lays out the documents that must be included with the written appeal request. Plan at PageID.385. For claims involving "urgent care" and both "pre-service" and "post-service" claims, the Plan states that an appeal must be filed "within 180 days of receiving notice of [the] denied claim." *Ibid.* Finally, the Plan states that a Plan beneficiary may forfeit her "legal rights" if she does not "follow the claims procedures," abide by the prescribed deadlines, or exhaust her "internal administrative appeal rights." Plan at PageID.385-86. "Additionally, legal action may not be brought against the Plan more than one year after a final decision on appeal has been reviewed under the Plan." *Ibid.*

Finally, under an advice of rights clause explaining beneficiary rights under ERISA, the Plan states:

> If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. . . . If, after you exhaust your appeals, you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or Federal court. Such suit must be filed within 180 days from the date of an adverse appeal determination notice.

Plan at PageID.495.

\* \* \* \* \*

On September 2, 2021, plaintiff Henry Ford Hospital filed its complaint against the defendants in the Oakland County, Michigan circuit court. The defendants removed the case to

this Court on October 5, 2021. The complaint pleads claims against the Plan for recovery of unpaid benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and a claim for breach of contract against the beneficiary individually. After discovery closed, the defendants filed their motion for summary judgment.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Id.* at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin*

*Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, that party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A. The 2017 Services

The Hospital obtained an assignment of benefits from Monica Chaney for the 2017 admission in exchange for the forbearance of its claim against her. It brings its claim for that admission solely against the Plan defendants. The Plan defendants argue that the Hospital is not entitled to payment from the Plan for the 2017 admission because it did not obtain preauthorization for the back surgery, it did not file an administrative appeal within 180 days after the claim was "denied or ignored," and it did not file this lawsuit within one year after the claim was denied or ignored, or within three years after the claim was assigned to it by the patient and then denied or ignored. The Hospital disputes these arguments, and with good reason.

A plan beneficiary has a cause of action against the plan for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). *Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678, 680 (6th Cir. 2022). Courts give fresh review to a plan administrator's claim denial unless the plan grants the administrator "'discretionary authority to determine eligibility for benefits or construe the terms of the plan.'" *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 545 (6th Cir. 2020) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In such cases, like the one we have here, courts utilize an arbitrary-and-capricious standard. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018). That standard calls for upholding

the plan administrator's decision if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Davis*, 980 F.3d at 547.

The defendants argue that the claims for recovery of benefits for the 2017 services are time-barred either under (1) the shortened one-year limitations period stated in the Plan, or (2) the three-year limitations period that governs ERISA breach of fiduciary duty claims, *see* 29 U.S.C. § 1113(2) ("No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part . . . after the earlier of . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."). However, as the plaintiff correctly points out, the section 1113(2) limitations period is inapplicable here because no breach of fiduciary duty claim is pleaded in the complaint. The only claim pleaded against the Plan defendants in this case is a claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B).

"ERISA does not provide a statute of limitations for a claim for benefits under § 1132(a)(1)(B)." *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 534 (6th Cir. 2008). "When a plan does not itself provide a limitations period, the Sixth Circuit applies 'the most analogous state statute of limitations' of the forum state." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762-63 (6th Cir. 2017) (quoting *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001)). "The Sixth Circuit has found that the most analogous Michigan cause of action to a denial-of-benefits claim under § 1132(a)(1)(B) is breach of contract," and "the statute of limitations for a breach-of-contract action under Michigan law is six years." *Ibid.* (citing *Santino*, 276 F.3d at 776; Mich. Comp. Laws § 600.5807). The applicable limitations period in this case is six years, not three.

The Plan defendants also argue that the Plan itself provides for a shortened one-year limitations period after a claim is "denied or ignored." The defendants rely on the Plan provision stating that "legal action may not be brought against the Plan more than one year after a final decision on appeal has been reviewed under the Plan." Plan at PageID.386. However, as that provision plainly states, it shortens the time to file suit "*after a final decision on appeal has been reviewed under the Plan.*" It is undisputed here that no "appeal" ever was commenced — nor was any subsidiary limitation period for pursuing one triggered — because there is nothing in the administrative record suggesting that the claim for 2017 benefits ever was "denied." Instead, the record demonstrates that the plaintiff repeatedly was informed, over the course of more than two years of regular correspondence, that the claim was "approved" and "processed" and merely was "awaiting release of funds" by the employer.

The Plan expressly states that a "denial" of a claim must be provided by "notice" from the Plan administrator. Plan at PageID.385 ("You may submit an appeal of [a] denied initial claim to the Claims Administrator [w]ithin 180 days of receiving *notice* of [the] denied claim."); *id.* at PageID.393 ("If, after you exhaust your appeals, you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or Federal court. Such suit must be filed within 180 days from the date of an adverse appeal determination *notice*.") (emphasis added). Under the Plan, any such "notice" is required to include an explanation of why the denial occurred. *See* Plan at PageID.495 ("If your claim for a welfare benefit is denied or ignored, in whole or in part, *you have a right to know why this was done*, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.") (emphasis added). In this case, there is no evidence in the record showing that any notice of either denial or adverse determination after administrative appeal ever was conveyed by the Plan to anyone. There

was no one-year period to sue after any final decision on appeal under the Plan, because there never was any appeal, or any notice of either an initial denial or a denial of a claim on appeal — or any reason for the Hospital or claimant to initiate an appeal — where the Plan administrator repeatedly stated that no adverse benefit determination had been made.

Moreover, the Sixth Circuit has held that in order to trigger any shortened limitations period under the terms of the Plan, the administrator must provide written notice in compliance with 29 U.S.C. § 1133, which requires, among other things, express written notice of the right to sue and the applicable shorter limitations period. *See* 29 U.S.C. § 1133 ("In accordance with regulations of the Secretary, every employee benefit plan shall (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."). It is settled that "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105-06 (2013). However, the Sixth Circuit has held that, at a minimum, the notice of denial of an administrative appeal from a benefits decision must not only advise claimants of the right to sue, but also expressly must state the applicable shortened limitations period for doing so. "The exclusion of the judicial review time limits from [an] adverse benefit determination letter [is] inconsistent with ensuring a fair opportunity for review and rendered the letter not in substantial compliance," and "'[a] notice that fails to substantially comply with [the] [§ 1133] requirements does not trigger a time bar contained within the plan.'" *Moyer v. Metro. Life Ins.*

*Co.*, 762 F.3d 503, 507 (6th Cir. 2014) (quoting *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003)). Here there was no "notice" supplied of any adverse benefit determination or denial of any claim after an internal appeal, so the Plan defendants cannot demonstrate that they have satisfied the mandatory notice requirements of section 1133.

The defendants counter that the statute of limitations was triggered because the claim was "ignored." But the record does not support that argument. Rather, the Hospital has offered evidence showing that the claim was *approved*, and the administrator was waiting for the employer to release the funds to cover the bills. At worst for the plaintiff, there is a material fact question over when, if ever, the claim accrued and the statute of limitations began to run.

The defendants have not offered sufficient evidence to show that the 2017 claim against the Plan defendants is time barred as a matter of law.

The Hospital also has presented sufficient evidence to establish a genuine question of material fact about whether "preauthorization" for the 2017 services was obtained, based on notes in the Hospital's own Account Record. The defendants insist that the Hospital did not obtain preapproval for the 2017 surgery because it contacted "Cofinity" instead of "Inetico" for permission to provide the treatment. The Plan filed a blurred copy of what it represents as Monica Chaney's insurance card, which gives the patient a phone number for Inetico to obtain treatment authorization. There is no date on that card, and nothing in the record establishes that it was the coverage credential in effect in 2017. Moreover, the Hospital has offered evidence that Cofinity was a clearinghouse that was used for all of the Plan's claims and that it relayed those claims to Inetico, which is the entity that issued the authorization. That argument makes more sense, since the Hospital record shows that the contact was answered with an approval authorization.

Because the Plan defendants have failed to produce any documentation from the prior claims administrator — and it appears that no such evidence presently is available — the Hospital's proofs on point are unrebutted. The Account Record shows that, on September 12, 2017 — two days before the surgery — the Hospital faxed Chaney's medical records to the Plan's "clearinghouse," identified in the Hospital's account history as "Cofinity." Account Record, ECF No. 21-1, PageID.648. The Account Record further indicates that on September 19, 2017 an authorization for the surgery was conveyed to the Hospital with authorization #20170912000357, accompanied by a note that the authorization was confirmed by "Case Manager Sarah." *Ibid.* That is sufficient evidence to suggest that the preauthorization requirement was satisfied, and the defendant is not entitled to dismissal on that ground.

The Plan defendants have not shown that they are entitled to judgment as a matter of law for the claim for payment for the 2017 services.

### B.  The 2019 Services

The Hospital mounts several arguments in its response directed to the Plan's objections that suit on the 2019 claims also is time barred and that the Plan requirement of precertification for the 2019 surgery was not followed. However, those arguments are irrelevant to any issues before the Court, because the Hospital admits subsequently in its opposition that "the Patient refused to sign an assignment of rights with regard to the 2019 claim," and, accordingly the Hospital "does not have standing to bring a claim against the Plan" to recover benefits payable for the 2019 surgery. Instead, the Hospital asserts that its sole claim is against Ms. Chaney individually for recovery of amounts due for the 2019 services, based on her agreement in the consent form that she signed agreeing to be responsible for all charges not covered by any insurance benefits or other third-party source. The claim is for breach of contract under state law.

The consent-for-treatment form certainly constitutes a written contract under Michigan law. "Under Michigan law, contracts arise when (1) competent parties bargain over (2) a 'proper subject matter,' so long as (3) 'consideration,' (4) 'mutuality of agreement,' and (5) 'mutuality of obligation' support the deal they strike." *Stackpole Int'l Engineered Prod., Ltd. v. Angstrom Auto. Grp., LLC*, No. 21-1733, 2022 WL 13815699, at *2 (6th Cir. Oct. 24, 2022) (quoting *AFT Michigan v. State of Michigan*, 497 Mich. 197, 235, 866 N.W.2d 782, 804 (2015)). There is no dispute here that the parties were competent to bargain and that the provision of medical treatment is a "proper subject matter" for contract. There was "consideration" in the form of the Hospital's agreement to provide medical services, *see* Consent Form, ECF No. 21-1, PageID.663 ("I agree to receive health care services from Henry Ford Health System."), and Chaney's agreement to pay the cost of those services, either herself or by payment on her behalf through the Plan, *ibid.* ("I will allow my insurance company to make payment directly to Henry Ford Health System. I understand that I am responsible for all charges not covered by my insurance company or other third-party payor."). The promises to provide services and in return to pay for them establish mutuality. *AFT Michigan*, 497 Mich. at 235–36, 866 N.W.2d at 804 ("Contracts necessarily contain promises: a contract may consist of a mutual exchange of promises, or the performance of a service in exchange for a promise.").

The defendants contend that there was an "implied promise" by the Hospital to secure payment for services rendered according to the terms of the Plan, based on the presentation by Chaney of her insurance card and the "silent acceptance" of that credential "without objection" from the Hospital. However, the consent form contains no such promise to secure benefits, and the implication of any such term is contrary to well settled principles of Michigan contract law. The Plan documents can be considered an insurance policy. "'[T]he foremost duty of a court in

construing an insurance policy is to determine the intent of the contracting parties. . . . If the text of the insurance policy is clear and unambiguous, the contract must be enforced as written. An unambiguous contractual provision is reflective of the parties' intent as a matter of law.'" *Telerico v. Nationwide Mut. Fire Ins. Co.*, 529 F. App'x 729, 731 (6th Cir. 2013) (quoting *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 473 Mich. 188, 214–15, 702 N.W.2d 106, 122 (2005)). There is nothing in the Plan documents that creates an obligation on the part of any healthcare provider to take any action for the benefit of the Plan beneficiary.

The consent form was a valid contract by Chaney to pay for medical services received, and the undisputed facts that the services were rendered and that payment has not been forthcoming from Chaney or any other source is *prima facie* proof of the Hospital's breach-of-contract claim against Chaney individually. "To state a claim for breach of contract, the claimant must establish that '(1) there was a contract; (2) which the other party breached; and (3) thereby resulting in damages to the party claiming breach.'" *Acrisure, LLC v. Hudak*, No. 22-17, 2022 WL 3025533, at *2 (W.D. Mich. Aug. 1, 2022) (quoting *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 164, 934 N.W.2d 665, 672 (2019)). It is well settled that a failure of performance or consideration constitutes a breach. *In re M.T.G., Inc.*, No. 95-48268, 2022 WL 6211494, at *173 (Bankr. E.D. Mich. Oct. 7, 2022) ("'A "substantial breach" is one which effects a change in the essential operative elements of the contract, such as a failure of consideration, or something that makes further performance by the other party ineffective or impossible.'") (quoting *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 574 (E.D. Mich. 2010) (citing *Chrysler Int'l Corp. v. Cherokee Export Co.*, 134 F.3d 738, 742 (6th Cir. 1998))).

Here it is undisputed that the Hospital has not been paid by anyone for the lion's share of the charges for the 2019 services. Nothing in the consent form expressly states that the Hospital

undertook any obligation to secure such payment on its own initiative from any party other than the patient. The plaintiff has made out sufficiently a viable claim for breach of contract against Chaney individually.

The curious part of the presentation on this claim is why Ms. Chaney refused to assign her rights to the Hospital for the 2019 medical bills in exchange for an agreement not to pursue her for payment, as she did for the 2017 admission. At oral argument, counsel for the Hospital made that offer to the Plan's attorney, who also represents Ms. Chaney, and that offer was refused. And Ms. Chaney has not filed a cross-claim against the Plan for the 2019 medical bills, even though there is a colorable claim against the Plan for that admission as well. When the Court asked defense counsel whether there was a conflict that arose from this joint representation, he gave an unsatisfactory response, saying only that "Ms. Chaney did not want to pursue the Plan because at the time she didn't think the Plan was the problem here." That response begs the question, though whether Ms. Chaney was properly advised of her options. The resolution of that question will have to wait for another day.

For the purpose of the motion presently before the Court, however it is sufficient to say that defendant Chaney is not entitled to summary judgment on the claim for the 2019 admission bills.

### III.

To the extent that the complaint might be read as pleading a claim against the Plan defendants for the 2019 admission bills, the record supports summary judgment on any such claim for those defendants only. However, none of the defendants have demonstrated that the record supports judgment as a matter of law on the remaining claims.

- 17 -

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 19) is **GRANTED IN PART AND DENIED IN PART**.  Any claim against defendants Oakland Truck and Equipment Sales, Inc. d/b/a Reefer Peterbuilt Employee Welfare Plan, and Claim Choice, LLC for payment of the medical bills for the 2019 hospital admission of Monica, only, Chaney is **DISMISSED**.  The motion is **DENIED** in all other respects.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   December 30, 2022